JOURNAL ENTRY AND OPINION
This is an appeal from decisions by Judge Carolyn Friedland that denied appellant Michael Yurkiw's (aka Donald Bias) Crim.R. 29 motion for acquittal and found, after a bench trial, he was guilty on two counts of felonious assault against police officers. Yurkiw claims there was no evidence that he knowingly attempted to cause harm to the officers. We affirm.
On September 10, 1994, at approximately 3:15 a.m., Cleveland Police Officers James Bezak and Kenneth Brown were patrolling in a marked police car in the area of East 71st Street and Quincy Avenue. They noticed a 1967 Chevrolet Impala southbound on East 71st at a slow rate of speed, which aroused their suspicion, and they checked on its license plate number only to learn that the plate was registered to a 1988 Ford car. They turned to follow and activated the overhead lights and siren as a signal for the driver of the Impala to pull over. Instead, the driver, later identified as Yurkiw, did not stop and gradually speeded up as he turned left onto Woodland Avenue, a four-lane road fairly deserted at that time.
Officers Charles Davis and James Gnatowski, advised by radio dispatch of the pursuit in progress, and in a marked police car with lights flashing and siren on, turned from East 79th Street onto Woodland, westbound, and saw the Impala and the pursuing police cruiser heading towards them in the eastbound lane. In order to let the Impala pass so he could make a U turn to join the pursuit, Gnatowski turned into the curb lane and stopped. The Impala suddenly went left of center, headed toward Gnatowski's car and, although he was partially successful in avoiding the oncoming Impala, it collided with the left rear quarter panel of the police car and continued down Woodland. The impact pushed the police car into a utility pole, causing damage to the right rear door. Both Gnatowski and Davis were treated at an emergency room and released and their car had to be towed.
Yurkiw proceeded on Woodland to East 79th, drove through a housing project, abandoned the Impala and attempted to flee on foot with both Bezak and Brown in pursuit. As Yurkiw was reaching into his waistband for a gun, he was tackled by Bezak, the gun fell to the ground and was later recovered.
Yurkiw, initially indicted under an alias of Donald Bias, was reindicted under his real name for the following offenses: two counts of felonious assault (Officers Bezak and Brown as the victims) in violation of R.C. 2903.11, with police officer specifications; failure to comply with an order or signal of a police officer, in violation of R.C.2921.331, with a violence specification; carrying a concealed weapon, in violation of R.C. 2923.12, with a violence specification; possession of criminal tools, in violation of R.C. 2923.24, with a violence specification; and, having a weapon while under a disability, in violation of R.C. 2923.13, with firearm and violence specifications. A capias warrant was issued for Yurkiw on February 28, 1995, and executed on February 26, 2000.[1]
During the bench trial on January 4, 2001, the State presented the testimony of Officers Bezak, Davis and Gnatowski; Yurkiw rested without presenting evidence. He was found guilty of felonious assault against Davis and Gnatowski, failure to comply, and possession of criminal tools, and was sentenced, under pre-Senate Bill 2 statutory guidelines, to five to twenty-five years in prison on the felonious assault counts, and eight months each on the failure to comply and possession of criminal tools, with all sentences to run concurrently with each other and his Federal prison term.
Yurkiw now assigns two errors for our review.
 I. THE APPELLANT'S CONVICTION OF TWO COUNTS OF FELONIOUS ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In evaluating a challenge to the verdict based on the manifest weight of the evidence presented at trial, an appellate court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has lost its way.[2]
This power is subject to strict and narrow constraints:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.
 It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
* * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.[3]
At the time of the crime in this case, felonious assault, R.C.2903.11, was defined as follows:
(A) No person shall knowingly:
(1) Cause serious physical harm to another;
 (2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
 (B) Whoever violates this section is guilty of felonious assault, an aggravated felony of the second degree. If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is an aggravated felony of the first degree.
A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.[4]
Yurkiw contends the State did not present sufficient evidence that he knowingly hit the zone car with his Impala and, therefore, the judge could not have found proof beyond a reasonable doubt, the mens rea requirement needed for a conviction for felonious assault.
The record reveals that, at the location and time of the collision, Woodland was a four-lane street without any obstructions in three lanes, such as parked cars, etc. The officers believed that Yurkiw hit their car on purpose because he needed to swerve across at least two traffic lanes in a very short distance. They also believed that the contact between the two cars could not be characterized as an unintended or reckless loss of control side-swipe but rather, because the two cars were far more perpendicular than parallel on impact, a purposeful ramming. Additionally, after being apprehended, there was nothing unusual about Yurkiw (such as an odor of alcohol or demeanor) that would indicate he was under the influence of any drug which would have impaired his ability to drive. Given this testimony, one could properly infer that Yurkiw knowingly struck the police car. This assignment of error has no merit.
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE ON THE FELONIOUS ASSAULT CHARGES.
Whether the evidence is legally sufficient to sustain a verdict is a question of law.[5] According to Crim.R. 29:
 The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction on such offense or offenses. * * *
Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[6]
There is no distinction in the particular weight or way of evaluating the evidence, be it direct or circumstantial.[7] Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence.[8]
While the determination that Yurkiw knowingly struck Davis and Gnatowski's zone car would be based on circumstantial evidence, sufficient evidence exists from which such an inference can be made. Without evidence to dispute the facts, that Yurkiw was sober and had a clear road ahead of him when he veered to his left and struck the zone car, the judge was justified in finding that all elements of felonious assault against the officers, including a knowing state of mind, had been satisfied beyond a reasonable doubt. Accordingly, this assignment of error has no merit.
Judgment affirmed.
It is ordered that the appellee recover from appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM. J., and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] After indictment on this charge, Yurkiw moved with his wife and children to Las Vegas, Nevada, where he was arrested on the capias warrant in 1999. Subsequently, he was charged in connection with a 1994 investigation by the Federal Bureau of Alcohol, Tobacco and Firearms for distributing crack cocaine. While this case was pending below, he pleaded to unspecified charges in Federal Case No. 99 CR 056 before U.S. District Court for the Northern District of Ohio, and was sentenced to a term of 97 months imprisonment. He is currently incarcerated in a Federal Penitentiary.
[2] See State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541.
[3] State v. Thompkins, supra at 387, 678 N.E.2d 541 (internal cites omitted.)
[4]R.C. 2901.22(B).
[5] State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388,124 N.E.2d 148.
[6] See State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541; State v. Jenks (1991) 61 Ohio St.3d 259, 574 N.E.2d 492.
[7] Id. at 272, 574 N.E.2d at 502.
[8] Id.